John R. GUNSALUS

v.

The CELOTEX CORPORATION, et al.

Civ. A. No. 85–7180.

United States District Court,
E.D. Pennsylvania.

Nov. 23, 1987.

Daniel G. Childs, Robert J. O'Shea, Jr., Thomas F. Johnston, Philadelphia, Pa., for plaintiff.

Joseph F. Moore, Jr., Thomas C. Gallagher, Andrew J. Trevelise, Philadelphia, Pa., for Celotex Corp., Eagle–Picher Industries, Inc., Fibreboard Corp., Owens–Corning Fiberglas Corp., Hopeman Bros., Inc., Owens–Illinois, Inc., Keene Corp. and Flintkote Co.

William J. O'Brien, Nancy J. Gellman, William J. O'Brien, Philadelphia, Pa., for The Tobacco Institute.

Edward F. Mannino, Virginia Lynn Hogben, Ann M. Caldwell, Brendan Kelley, Philadelphia, Pa., for The American Tobacco Co.

Joan K. Garner, Asst. U.S. Atty., for U.S.

G. Daniel Bruch, Jr., Philadelphia, Pa., for Pacor, Inc.

Edward F. Mannino, Philadelphia, Pa., for American Brands, Inc.

Joseph M. Fioravanti, Media, Pa., for Combustion Engineering Inc.

Nathaniel Metz, Edward Greer, Stuart J. Agins, Philadelphia, Pa., for GAF Corp.

Walter D. Meeley, Philadelphia, Pa., for Nicolet, Inc.

Frederic L. Goldfein, Philadelphia, Pa., Ellen Brown Furman, Mark F. McDonald, for Asbestos Corp. Ltd.

Joseph F. Moore, Jr., Thomas C. Gallagher, Philadelphia, Pa., for Southern Textile Co., H.K. Porter Co., Armstrong World Industries, Inc. and Pittsburgh Corning Corp.

Barbara J. Lipshutz, Philadelphia, Pa., for Uniroyal, Inc.

Edward T. Lawlor, Jr., Media, Pa., for C.E. Refractories.

## MEMORANDUM and ORDER

SHAPIRO, District Judge.

Plaintiff, John R. Gunsalus, filed a personal injury action against sixteen manufacturers of asbestos products (the "asbestos defendants"), the Tobacco Institute and the American Tobacco Company (or American Brands, Inc.) (the "Tobacco defendants"); he alleges that the synergistic effect of smoking cigarettes and working with substantial quantities of asbestos caused him to develop lung cancer. Now before the court are the motion of the Tobacco Institute for judgment on the pleadings and/or summary judgment and the motion of American Tobacco Company for summary judgment.

The Tobacco Institute, incorporated in 1958, is a trade association of the tobacco industry. It disseminates information about the tobacco industry but has never manufactured, sold, or distributed tobacco or any tobacco product. The American Tobacco Company manufactures Pall Mall cigarettes; plaintiff alleges that he has smoked Pall Mall cigarettes since approximately 1942 when he was eleven years old.

The first four counts of plaintiff's complaint assert claims against the asbestos defendants only. Counts five through nine assert claims against the American Tobacco Company for negligence (Count V), breach of warranty (Count VI), negligent and fraudulent misrepresentation (Count VII), strict liability (Count VIII) and violation of the Pennsylvania Unfair and Deceptive Practices Act (Count IX). Counts ten and eleven assert claims against the Tobacco Institute for negligent and fraudulent misrepresentation (Count X) and for violation of the Pennsylvania Unfair and Deceptive Practices Act (Count XI). Count twelve is asserted against all defendants and incorporates all prior counts.

Because of developments in the law and in this case, the court required plaintiff to

state in his preliminary pretrial memorandum those counts he was pursuing. At that time, plaintiff expressed his intention to proceed on all counts. However, in plaintiff's response to the motions for summary judgment and at oral argument, plaintiff withdrew or modified some of the counts asserted against the tobacco defendants. Counts IX and XI, alleging violations of the Pennsylvania Unfair and Deceptive Practices Act, were withdrawn. The court also determined that Count XII, stating not a separate basis for liability but merely alleging causation and damages, should not be treated as a separate count.

In light of *Cipollone v. Liggett Group, Inc.*, 789 F.2d 181 (3d Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 907, 93 L.Ed. 2d 857 (1987), plaintiff now concedes that all of his claims against the Tobacco Institute and the American Tobacco Company challenging "the adequacy of the warning on cigarette packages or the propriety of a party's actions with respect to the advertising and promotion of cigarettes," *Id.* at 187 (footnote omitted), since January 1, 1966 are preempted by the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. § 1331 *et seq.*[1] *See also Stephen v. American Brands, Inc.*, 825 F.2d 312 (11th Cir. 1987); *Palmer v. Liggett Group, Inc.*, 825 F.2d 620 (1st Cir.1987).

Plaintiff still seeks to proceed against the Tobacco Institute on a modified version of Count X that asserts "good samaritan" liability under §§ 323 and 324A of the Restatement (Second) of Torts. *See* Plaintiff's Memorandum of Law in Response to the Tobacco Institute's Motion for Judgment on the Pleadings and/or Summary Judgment at 1–2, 13–14. The Tobacco Institute moves for judgment on the pleadings and/or summary judgment. For the reasons stated below, the Tobacco Institute's motion is granted.

The court is faced with some confusion concerning the theories on which plaintiff seeks to proceed against the American Tobacco Company, but they apparently include negligence, strict liability, misrepresentation and breach of warranty. The negligence and strict liability claims are based on "good samaritan" liability, design defect and risk-utility, as well as failure to warn prior to January 1, 1966. The American Tobacco Company moves for summary judgment. For the reasons stated below, American Tobacco Company's motion for summary judgment is granted in part and denied in part.

First, we consider whether the statute of limitations had run as to the Tobacco defendants on the date this action was instituted. Next we consider whether viable claims have been stated for "good samaritan" liability. Finally, we consider if there are genuine issues of material fact as to the remaining claims and whether the American Tobacco Company is entitled to judgment as a matter of law.

### I. Statute of Limitations

The Tobacco defendants both move for summary judgment on the ground that plaintiff's claims are barred by Pennsylvania's statute of limitations. Under Fed.R. Civ.P. 56, summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Since the applicability of the statute of limitations usually involves questions of fact for the jury, defendants bear a heavy burden in seeking to establish as a matter of law that the challenged claims are barred.

*Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 498 (3d Cir.1985).

### A. Personal Injury Claims

Pennsylvania's two-year statute of limitations for personal injury actions applies to all of plaintiff's claims against the tobacco defendants except the breach of warranty claims. 42 Pa.C.S.A. § 5524(2) (Purdons 1987).

---

1. Additionally, following the conference held on October 14, 1986, Count 2 of plaintiff's claim was deemed withdrawn.

Normally, a claim arising under Pennsylvania law accrues at "the occurrence of the final significant event necessary to make the claim suable." *Mack Trucks, Inc. v. Bendix–Westinghouse Automotive Air Brake Co.*, 372 F.2d 18, 20 (3d Cir.1966), *cert. denied*, 387 U.S. 930, 87 S.Ct. 2053, 18 L.Ed.2d 992 (1967). In a latent disease case, however, where the claim is not discoverable despite the exercise of due diligence, the limitations period is tolled under the "discovery rule." *Owens v. Lac D'Amiante du Quebec, Ltee.*, 656 F.Supp. 981, 982 (E.D.Pa.1987), *aff'd without opinion*, 833 F.2d 306 (3d Cir.1987). The statute of limitations in such a case begins to run when "the plaintiff knows or reasonably should know of an injury and also knows or reasonably should know that the injury was caused by the wrongful act of another." *Wheeler v. Johns–Manville Corp.*, 342 Pa.Super. 473, 493 A.2d 120, 122 (1985); *see also Urland v. Merrell–Dow Pharmaceuticals, Inc.*, 822 F.2d 1268 (3d Cir.1987); *Cowgill v. Raymark Industries, Inc.*, 780 F.2d 324, 330 (3d Cir.1985); *Price v. Johns–Manville Corp.*, 336 Pa.Super. 133, 485 A.2d 466 (1984); *Cathcart v. Keene Industrial Insulation*, 324 Pa.Super. 123, 471 A.2d 493, 500 (1984). The statute of limitations begins to run on an injury caused by the tortious conduct of a defendant, even if that defendant's conduct is not the sole cause of the injury if it is a substantial factor. *See Van Buskirk, supra*, 760 F.2d at 492.

Although defendants bear the burden of proof on the statute of limitations defense, plaintiffs bear the burden of proving that the discovery rule should apply. "[T]he discovery rule does not reward ignorance, but 'imposes a burden of diligence upon plaintiff to inform himself.'" *Van Buskirk, supra*, 760 F.2d at 498 (quoting *Grabowski v. Turner & Newall*, 516 F.Supp. 114, 118 (E.D.Pa.1980), *aff'd sub nom., DaMato v. Turner & Newall, Ltd.*, 651 F.2d 908 (3d Cir.1981) (per curiam)).

This complaint was filed on December 13, 1985. Defendants contend that at least by 1979, plaintiff knew or should have known that he had a heart injury and severe shortness of breath and "the possible causal relationship of these injuries to his cigarette smoking." American Tobacco Company's Memorandum of Law in Support of its Motion for Summary Judgment at 17.

■ In the mid–1950s, plaintiff was stabbed in the heart; in the mid–1970s he suffered three heart attacks and had serious heart disease symptoms as well as shortness of breath. Defendants contend these facts are sufficient to preclude recovery for all injuries caused by cigarette smoking including the instant claim for lung cancer even though there is nothing in the record to suggest that plaintiff had reason to know that he had lung cancer more than two years before the institution of this suit. If plaintiff's heart condition or shortness of breath were caused by cigarette smoking, it would not matter under the statute of limitations that he now claims damages for lung cancer. Under Pennsylvania law, "a plaintiff's claims for *all* injuries arising out of the same tortious conduct of a defendant must be brought within two years of the time that the plaintiff knows, or in the exercise of reasonable diligence should know, of his initial injury and that the injury was caused by someone's wrongful conduct," even if the injuries are of completely different types and affect different parts of the body. *Cathcart, supra*, 471 A.2d at 507; *see also Ross v. JohnsManville Corp.*, 766 F.2d 823, 826 (3d Cir.1985).

Plaintiff testified that Dr. Rosenberg told him in 1954, "You ought to give up cigarettes. It's [sic] ain't doing you no good. That your heart is bad now." Gunsalus deposition, August 20, 1986, at 306. At some point in the 1970s, Dr. Rosenberg informed plaintiff that he had suffered a heart attack and told plaintiff to stop smoking. Plaintiff stated that Dr. Rosenberg told him:

What happened, he said my heart problem was caused from the stabbing and cutting up I had. They cut the outside lining of the heart and nicked the heart, when I got stabbed and cut up. He said, 'Your heart is so damaged and so weak,' he said, 'you've got to quit smoking and

you've got to quit drinking and you've got to do this.' That was it. *Id.* at 181. Dr. Rosenberg told plaintiff again in 1985, "that smoking wasn't helping [his heart] any." *Id.* at 308. Plaintiff testified that he was never told that smoking caused his shortness of breath, but that he was told "my heart condition and smoking, it was contributing to the shortness of breath." *Id.* at 341. In his deposition, plaintiff admitted he was told by three different doctors to stop smoking.

■ Following the stabbing and heart attacks, plaintiff knew that he had a heart injury; he also knew more than two years before the institution of this suit that he had shortness of breath. However, the evidence presently of record does not establish as a matter of law that plaintiff knew or had reason to know that either his heart condition or shortness of breath were caused in whole or substantial part by cigarette smoking or that his cigarette smoking so aggravated preexisting injuries that it constituted a new injury sufficient to start the running of the statute of limitations.[2]

There are at least two genuine issues of material fact on the personal injury claims statute of limitations issue.[3]

First, the jury will have to determine whether cigarette smoking had a sufficient causal connection to plaintiff's heart condition or shortness of breath for a claim to have accrued against the Tobacco defendants. The jury may find either that cigarette smoking was a substantial factor in causing plaintiff's heart condition or shortness of breath or that smoking so aggravated plaintiff's preexisting heart condition or shortness of breath that it was a separate injury sufficient to start the running of the statute of limitations. Only if plaintiff's heart condition or shortness of breath was caused by the tortious conduct of the Tobacco defendants does the statute of limitations on his lung cancer claim begin to run

when plaintiff knew or had reason to know of the heart condition or shortness of breath.

Second, if the jury finds a sufficient causal nexus between the heart condition or shortness of breath and cigarette smoking, it will then have to determine whether at the end of the 1970s plaintiff knew or should have known of the causal connection between the heart injury and cigarette smoking. *Van Buskirk, supra,* 760 F.2d at 487 ("[w]hether or when a plaintiff knows or has reason to know of the existence and cause of his or her injury will often turn on inferences drawn from disputed facts"). Because these genuine issues of material fact exist, summary judgment based on the statute of limitations defense on plaintiff's pre–1966 personal injury claims is denied. At the final pretrial conference, the court will consider severing the statute of limitations issue on the tobacco counts and trying it separately or sending special interrogatories to the jury.

### B. *Breach of Warranty*

The Pennsylvania Commercial Code's four-year statute of limitations applies to the breach of warranty claim against the American Tobacco Company (Count VI). 13 Pa.C.S.A. § 2725 (Purdons 1984). Plaintiff concedes that the post-January 1, 1966 breach of warranty claims are preempted, *see Cipollone, supra,* but argues that the pre-January 1, 1966 claims are not preempted and not barred by the statute of limitations.

■ The statute of limitations on breach of warranty claims runs from the date of the sale of the product, "except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." 13 Pa.C.S. § 2725(b). Unless there is

---

2. Plaintiff had a heart injury. Whether his shortness of breath constituted an "injury" sufficient to start the running of the statute of limitations is a question of fact for the jury. *See Cathcart v. Keene Industrial Insulation,* 324 Pa. Super. 123, 471 A.2d 493, 500 n. 10 (1984).

3. Depending on the jury's resolution of these two issues of fact, it may also have to determine whether shortness of breath is itself sufficient injury to start the running of the statute of limitations in view of its symptomatic relationship to lung cancer.

an explicit warranty of future performance, the discovery rule will not toll the running of the statute of limitations. *See O'Brien v. Eli Lilly & Co.*, 668 F.2d 704, 711 (3d Cir.1981).

Plaintiff contends that American Tobacco Company's advertisements that Pall Mall cigarettes "guard against throat scratch" constitute explicit warranties of future performance so that the discovery rule applies. General statements made in advertising do not constitute explicit warranties of future performance. The advertisements submitted by plaintiff contain no explicit guarantee, promise, or warranty at all and do not constitute express warranties of future performance as a matter of law. The advertisements stating that Pall Mall cigarettes "guard against throat scratch" or "lessen throat irritation" (*see* Exhibits to Plaintiff's Memorandum of Law in Response to American Tobacco's Motion for Summary Judgment) do not promise anything but smoker satisfaction that could be evaluated by the user immediately. The advertisements did not "extend to future performance" within the meaning of the Pennsylvania Commercial Code. Two of the advertisements said that Pall Malls were "mild," and one said "Prove it! Yourself, try Pall Mall critically." The clear implication of the advertisements was that the user would enjoy mildness immediately, not at some later time. Plaintiff himself said he understood the advertisements to mean that if you smoked Pall Mall cigarettes "[Y]our throat wouldn't hurt. It wouldn't make it sore." Gunsalus Deposition, August 22, 1986, at 37. Plaintiff did not even intimate that he considered the advertisements any sort of promise of future performance.

Because the burden of proof is on plaintiff to show that the discovery rule applies and he has failed to submit evidence sufficient to create a genuine issue of material fact on its application, summary judgment is granted in favor of the American Tobacco Company on plaintiff's breach of warranty claims.

## II. *Good Samaritan Liability*

Plaintiff now asserts negligence claims against both the Tobacco defendants based on breach of "good samaritan" liability. But plaintiff's complaint and his pretrial memorandum do not articulate a claim for breach of "good samaritan" liability against the Tobacco defendants; this theory of liability first appeared in plaintiff's responses to the motions for summary judgment. At oral argument, the defendants protested the unfairness of asserting a new theory of liability at this time. The court need not determine whether plaintiff is precluded from asserting this claim as untimely because whenever asserted the Tobacco defendants are entitled to summary judgment on these claims.[4]

Section 323 of the Restatement (Second) of Torts provides:

> One who undertakes gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.

Section 324A provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

---

**4.** Thus, it becomes irrelevant whether or not plaintiff may have been able to plead a claim for "good samaritan" liability that would have withstood a motion for judgment on the pleadings if the court had granted a motion to amend the pleadings.

The Pennsylvania courts have adopted §§ 323 and 324A of the Restatement as a basis of tort liability. *See, e.g., Evans v. Liberty Mutual Insurance Co.*, 398 F.2d 665 (3d Cir.1968); *Morena v. South Hills Health System*, 501 Pa. 634, 462 A.2d 680, 684 (1983); *DeJesus v. Liberty Mutual Insurance Co.*, 423 Pa. 198, 223 A.2d 849 (1966).

A plaintiff proceeding under § 323 or § 324A must establish the underlying elements of an action in negligence: a cognizable duty or obligation requiring the actor to conform to a certain standard of conduct; a failure to conform to the standard required; a causal connection between the conduct and the resulting injury; and actual loss or damage resulting to the interests of another. *Morena, supra*, 462 A.2d at 684 n. 5 (citing Prosser Law of Torts, § 30 at 143 (4th ed. 1971)); *Macina v. McAdams*, 280 Pa.Super. 115, 421 A.2d 432, 434 (1980). Sections 323 and 324A cannot be invoked to create a duty where one does not exist. *Morena, supra*, 462 A.2d at 684.

■ Plaintiff argues that the Tobacco Institute assumed duties to inform him of the dangers of cigarette smoking. The Tobacco Institute's statement of purposes in its Articles of Incorporation provides in pertinent part:

The purposes for which it is formed ... are: to promote a better understanding by the public of the tobacco industry and its place in the national economy; to cooperate with governmental agencies and public officials with reference to the tobacco industry; to collect and disseminate information relating to the use of tobacco; to collect and disseminate scientific and medical material relating to tobacco....

He contends that the Tobacco Institute "undertook the task of collecting and disseminating scientific, medical and other information about tobacco to the public, and pledged to cooperate with those responsible in government.... Having undertaken the task of informing the public of medical and scientific developments as they relate to tobacco, plaintiff's allegation is that the [Tobacco Institute] was negligent in its dissemination of such information to the public." Plaintiff's Memorandum of Law in Response to Tobacco Institute's Motion for Judgment on the Pleadings and/or Summary Judgment at 3–4.

Plaintiff argues that the American Tobacco Company assumed a similar duty when its president signed a pledge published in the New York Times in response to concern over medical reports linking tobacco with lung cancer. The pledge stated *inter alia:*

We always have and always will cooperate closely with those whose task it is to safeguard the public;

We are pledging aid and assistance to the research effort into all phases of tobacco use and health. This joint financial aid will of course be in addition to what is already being contributed by individual companies;

For this purpose we are establishing a joint industry group consisting initially of all of the undersigned. This group will be known as the TOBACCO INDUSTRY RESEARCH COMMITTEE.

In charge of the research activities of the Committee will be a scientist of unimpeachable integrity and national repute. In addition, there will be an Advisory Board of scientists disinterested in the cigarette industry. A group of distinguished men from medicine, science, and education will be invited to serve on this Board. These scientists will advise the Committee on its research activities.

This statement is being issued because we believe the people are entitled to know where we stand on this matter and what we intend to do about it.

Plaintiff argues that these claims are not preempted by the Federal Cigarette Labeling and Advertising Act under *Cipollone*, because the duty does not focus on warnings, advertising and promotion. In *Cipollone*, the Court of Appeals held, "that where the success of a state law damage claim necessarily depends on the assertion that a party bore the duty to provide a warning to consumers in addition to the warning Congress has required on cigarette packages, such claims are preempted

as conflicting with the Act." 789 F.2d at 187.

Plaintiff's claims for "good samaritan" liability are clearly premised on the assertion that the Tobacco defendants bore a duty to plaintiff to provide information about the damages of cigarette smoking. The holding of *Cipollone* leaves no room to argue on these facts that defendants assumed a greater duty to warn than that imposed on them by the Act. Under *Cipollone*, plaintiff's claims for breach of "good samaritan" liability after January 1, 1966 are preempted. The Tobacco defendants' motions for summary judgment on those claims are granted.

■ The Tobacco defendants are also entitled to summary judgment on the pre-January 1, 1966 "good samaritan" liability claims because their statements are insufficient to create a duty and any failure to fulfill their promises did not increase the risk of harm to plaintiff.

Neither the Tobacco Institute's corporate purposes nor the American Tobacco Company's general statements in advertising constitute an assumption of a duty to plaintiff to perform research and inform him of all dangers of cigarette smoking. The Pennsylvania courts have not yet extended "good samaritan" liability to companies for failure to comply with corporate purposes or promises made in advertising. We predict that the Pennsylvania Supreme Court when presented with this issue will not find that parties like the Tobacco defendants assumed a duty to plaintiffs on facts similar to the undisputed facts of record. "[B]ecause the non-moving party has failed to make a sufficient showing on [assumption of duty], an essential element of [his] case with respect to which [he] has the burden of proof," the Tobacco defendants are entitled to judgment on the pre-January 1, 1966 "good samaritan" liability claims as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ Even if the Tobacco defendants had assumed a duty to perform research and provide plaintiff with information regarding the dangers of cigarette smoking, plain-tiff has produced no evidence that the Tobacco defendants' breach of that duty increased the risk of harm to plaintiff or that plaintiff detrimentally relied on their statements. Plaintiff asserts only that if he had known of the dangers of cigarette smoking earlier, he would have tried to quit even though he admitted under oath that, on more than one occasion, he was strongly advised by his own treating physician not to smoke. *See* discussion, *supra* at 1153–1154. And he has submitted absolutely no evidence that he—or anyone else—was deterred from investigating the dangers of cigarette smoking by the failure of the Tobacco Institute to comply with its corporate purposes or by the advertisements of the American Tobacco Company. Therefore, had the Tobacco defendants breached a duty to plaintiff, plaintiff suffered no harm thereby because his risk of injury from cigarette smoking was not increased and the breach, if any, caused no harm to the plaintiff. *See Blessing v. United States*, 447 F.Supp. 1160, 1199–1200 (E.D. Pa.1978). Plaintiff has not established either increased risk of harm or detrimental reliance, essential elements of his claim as to which he bears the burden of proof. Therefore, even if a duty were found, the Tobacco defendants are entitled to judgment as a matter of law on the "good samaritan" liability claim. *See Celotex, supra*. The Tobacco Institute's motion for judgment on the pleadings and/or summary judgment is granted in its entirety.

### III. *Strict Liability*

Plaintiff asserts claims against the American Tobacco Company based on "design defect" and "risk-utility," two theories of strict products liability. American Tobacco Company moves for summary judgment on the grounds that Pennsylvania does not permit liability under § 402A of the Restatement (Second) of Torts for injuries caused by a product absent proof of a defect and does not recognize a cause of action based on risk-utility.

#### A. *Design Defect*

Section 402A of the Restatement provides:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although (a) the seller has exercised all possible care in the preparation and sale of his product, and (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

The Supreme Court of Pennsylvania in *Webb v. Zern,* 422 Pa. 424, 220 A.2d 853 (1966) adopted § 402A as the law of Pennsylvania. In *Berkebile v. Brantly Helicopter Corp.,* 462 Pa. 83, 337 A.2d 893 (1975), a plurality of the court clarified the law of strict products liability in Pennsylvania.

Strict liability requires, in substance, only two elements of requisite proof: the need to prove that the product was defective, and the need to prove that the defect was a proximate cause of plaintiff's injuries. Thus, the plaintiff cannot recover if he proves injury from a product absent proof of defect, such as developing diabetic shock from eating sugar or becoming intoxicated from drinking whiskey. Neither can plaintiff recover by proving a defect in the product absent proof of causation, as where plaintiff sustains eye injury while not wearing defective safety glasses.

*Id.* 337 A.2d 898 (plurality opinion; all justices concurring in result) (footnote omitted); *see also Azzarello v. Black Brothers Co.,* 480 Pa. 547, 391 A.2d 1020 (Pa.1978).

Although a supplier is the guarantor of its product's safety, it is not the insurer. *Azarello, supra,* 391 A.2d at 1024 (supplier may not be held liable under § 402A absent proof of a defect). *Id.* Comment i to § 402A provides:

**i. Unreasonably dangerous.** The rule in this Section applies only where the defective condition of the product makes it unreasonably dangerous to the user or consumer. Many products cannot possibly be made entirely safe for all consumption, and any food or drug necessarily involves some risk of harm, if only from over-consumption. Ordinary sugar is a deadly poison to diabetics, and castor oil found use under Mussolini as an instrument of torture. That is not what is meant by 'unreasonably dangerous' in this Section. The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics. Good whiskey is not unreasonably dangerous merely because it will make some people drunk, and is especially dangerous to alcoholics; but bad whiskey, containing a dangerous amount of fusel oil, is unreasonably dangerous. *Good tobacco is not unreasonably dangerous merely because the effects of smoking may be harmful; but tobacco containing something like marijuana may be unreasonably dangerous.* Good butter is not unreasonably dangerous merely because, if such be the case, it deposits cholesterol in the arteries and leads to heart attacks; but bad butter, contaminated with poisonous fish oil, is unreasonably dangerous.

Restatement (Second) of Torts, § 402A (emphasis supplied).

Under the tort law of Pennsylvania, plaintiff may not recover from defendant American Tobacco Company for injuries caused by the inherent dangers of cigarette smoking without showing a defect. There is no evidence in the record to suggest that the tobacco supplied by the American Tobacco Company was not "good" within the meaning of Comment i. The tobacco was not a "defective" product because it may or does cause or increase the risk of lung cancer and other life threatening diseases. The only cognizable defect asserted by plaintiff is the failure adequately to warn of the dangers of cigarette smoking.

"[T]he jury may find a defect where the product left the supplier's control lacking any element necessary to make it safe for its intended use or possessing any feature that renders it unsafe for the intended use." *Azarello, supra,* 391 A.2d at 1027 (footnote omitted). But "[o]ne such element may be warnings and/or instructions concerning use of the product." *Berkebile, supra,* 337 A.2d at 902; *see also Dambacher v. Mallis,* 336 Pa.Super. 22, 485 A.2d 408 (1984).

■ To the extent that plaintiff's claims for defective design are based on failure adequately to warn of the dangers of cigarette smoking, all claims since January 1, 1966 are preempted. *Cipollone, supra,* 789 F.2d at 187. But the strict liability claim for the pre-January 1, 1966 manufacture and sale of cigarettes allegedly defective because of inadequate warnings is not barred by preemption. Therefore, summary judgment is granted only on the post January 1, 1966 § 402A failure to warn claims.

### B. *Risk–Utility*

■ Plaintiff also argues that he should recover damages from the American Tobacco Company because the risks caused by cigarettes outweigh their social utility. Some courts have recognized liability of a supplier for injuries caused by a product based on a comparison of the utility of the product with the risk of injury that it poses. *See, e.g., O'Brien v. Muskin Corp.,* 94 N.J. 169, 463 A.2d 298 (1983). But this doctrine, making the supplier an insurer of products the judge deems too dangerous to use, impermissibly allows judges to decide cases based upon their own views of social or personal utility. Whether products should be banned or whether absolute liability should be imposed for their use are determinations more appropriately made by the legislative branch of government.

Pennsylvania courts have not adopted the risk-utility theory of liability. We believe that if the Supreme Court of Pennsylvania were faced with this risk-utility claim, it would reject it. Therefore, summary judgment is granted in favor of de-fendant the American Tobacco Company on plaintiff's risk-utility claims.

### IV. *Plaintiff's Pre–January 1, 1966 Misrepresentation Claims*

■ The American Tobacco Company has moved for summary judgment on plaintiff's pre-January 1, 1966 misrepresentation claims because plaintiff cannot prove that he reasonably relied on any misrepresentations of the American Tobacco Company or that he suffered injury as a result. Plaintiff asserts claims for intentional misrepresentation, negligent misrepresentation, and Restatement (Second) of Torts, § 402B misrepresentation. Plaintiff claims three Pall Mall advertisements constituted misrepresentations. *See* Exhibits to Plaintiff's Memorandum of Law in Response to American Tobacco's Motion for Summary Judgment. The first depicted a man and two women and contained the statement, "Guard Against Throat Scratch"; the second depicted Santa Claus smoking with the same statement; the third had depicted a male soldier talking to a woman and asserted that Pall Mall cigarettes lessened throat irritation. (Plaintiff failed to identify the latter at deposition but did remember the others. *See* Gunsalus deposition, August 22, 1986 at 34–39.)

Plaintiff argues that these American Tobacco advertisements did not represent or misrepresented the health or safety aspects of smoking. These advertisements were probably not representations of fact as a matter of law but even if they were, they were representations of mildness or comfort, taste or enjoyment, not health or safety.

Even assuming they were intentional or negligent misrepresentations, in order to prevail on these claims, plaintiff must also prove justifiable or reasonable reliance and a causal connection between the representations and the alleged harm. *See, e.g., Klemow v. Time, Inc.,* 466 Pa. 189, 352 A.2d 12, *cert. denied,* 429 U.S. 878, 97 S.Ct. 86, 50 L.Ed.2d 91 (1976); *Michelson v. Exxon Research and Engineering Co.,* 588 F.Supp. 92 (W.D.Pa.1984), *aff'd* 762 F.2d 993 (3d Cir.1985); Restatement (Second) of

Torts, § 402B. These advertisements are not the kind of representations upon which reasonable people would rely; they suggest only that a smoker might enjoy Pall Mall cigarettes more than other brands. The perceived enjoyment or lack of it experienced by the smoker after purchasing the cigarettes in reliance on the advertisements is what determines his continuing to smoke that brand or another.

⬛ Plaintiff stated at his deposition that he remembered seeing Pall Mall advertisements stating that Pall Mall cigarettes helped the throat or were better for the throat than other cigarettes; he identified Pall Mall ads and stated that those advertisements were among the reasons he continued to smoke Pall Mall cigarettes. Gunsalus deposition, August 22, 1986, at 33–39. But he also stated that his cousin originally encouraged him to try cigarettes and selected Pall Mall cigarettes for him (*see* Gunsalus deposition, August 22, 1987, at 72–74; August 20, 1987, at 52, 382–83). Plaintiff admitted that he occasionally smoked other brands and never noticed a difference but smoked the Pall Mall brand because it just got to be a habit. (*See* Gunsalus deposition, August 20, 1987, at 390). In view of plaintiff's statements and the content of the advertisements themselves, a reasonable factfinder could not conclude that plaintiff continued to smoke in reliance on defendant's advertisements.

⬛ Even if the advertisements were representations of fact on which plaintiff reasonably relied in switching brands to Pall Mall or continuing to smoke Pall Mall cigarettes, these alleged representations lack sufficient causal nexus to the harm of which plaintiff complains. Plaintiff does not allege that he would have stopped smoking had he not seen the advertisements or that he would have smoked a safer brand. Plaintiff claims: "Addiction kept John Gunsalus smoking; deceptive advertisements kept him loyal to a brand which claimed it would do less harm to his body than its competitors." Plaintiff's Memorandum of Law in Response to American Tobacco's Motion for Summary Judgment at 35. He admits he was addicted and therefore would have smoked some brand of cigarettes regardless of whether American Tobacco had advertised the Pall Mall brand. Plaintiff alleges that smoking in general, not smoking Pall Mall's in particular, caused his injury; the alleged misrepresentations as to Pall Mall cigarettes fail to state a cause of action for lack of causation.

Because there are no genuine issues of material fact, summary judgment is granted on plaintiff's pre-January 1, 1966 misrepresentation claims.

## V. *Conclusion*

The Tobacco Institute is dismissed as a defendant. Neither of plaintiff's claims against it can survive a motion for summary judgment. The following claims against the American Tobacco Company may proceed: pre-January 1, 1966 negligence claims based on failure to warn (Count V) and pre-January 1, 1966 strict liability claims based on lack of warnings (Count VIII). At the final pretrial conference, plaintiff shall state if he wishes to pursue Count V, which permits a defense of contributory negligence by an objective standard in view of Count VIII, which permits only a defense of assumption of risk by a subjective standard. Issues of severance and order of proof will also be considered.

An appropriate Order follows.

## ORDER

AND NOW, this 23rd day of November, 1987, upon consideration of the motion of American Tobacco Company for summary judgment and the motion of Tobacco Institute for judgment on the pleadings and/or summary judgment, and for the reasons stated in the foregoing Memorandum, it is ORDERED that:

1. The motion of Tobacco Institute for judgment on the pleadings and/or summary judgment is GRANTED.

2. Plaintiff's claims against American Tobacco Company for breach of warranty, negligent failure to warn, strict liability based on a warning defect, and misrepresentation since January 1, 1966 are WITH-

DRAWN. *See Cipollone v. Liggett Group, Inc.,* 789 F.2d 181, 187 (3d Cir. 1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 907, 93 L.Ed.2d 857 (1987).

3. The motion of American Tobacco Company for summary judgment is GRANTED in part and DENIED in part as follows:

a. The motion for summary judgment on the statute of limitations on pre-January 1, 1966 non-warranty claims, Counts V, VII and VIII is DENIED.

b. The motion for summary judgment on the statute of limitations on plaintiff's pre-January 1, 1966 breach of warranty claim, Count VI, is GRANTED.

c. The motion for summary judgment on "good samaritan" liability is GRANTED.

d. The motion for summary judgment on plaintiff's pre-January 1, 1966 claims on warning defect is DE-NIED.

e. The motion for summary judgment on risk-utility is GRANTED.

f. The motion for summary judgment on plaintiff's pre-January 1, 1966 misrepresentation claims is GRANTED.

4. Plaintiff is precluded from raising any additional theories of liability against American Tobacco Company; plaintiff may proceed against American Tobacco Company on the following claims:

Count V—pre-January, 1966 negligent failure to warn; and

Count VIII—pre-January, 1966 product liability (failure to warn).