Maria **TAVAREZ**; Bruno Tavarez, Plaintiffs–Appellants,

v.

Eleftheria **LELAKIS**, Defendant–Third–Party Plaintiff–Appellee,

**Galleria Condominium, Third–Party–Defendant–Appellee.**

No. 440, Docket 97–7361.

United States Court of Appeals, Second Circuit.

Argued Oct. 16, 1997.

Decided May 13, 1998.

Donald Drew Goldberg, New York City (Samuel J. Lurie, New York City, of counsel) for Plaintiffs–Appellants.

Stephen X. Wright, Stiles & Wright, P.C., New York City (of counsel) for Defendant–Third–Party Plaintiff–Appellee.

David Weinberger, New York City (Gary M. Carlton, Goldberg & Carlton, New York City, on brief) for Third-Party–Defendant–Appellee.

Before: JACOBS and LEVAL, Circuit Judges, and RESTANI, Judge.*

LEVAL, Circuit Judge:

Plaintiffs Maria and Bruno Tavarez appeal from summary judgment entered in the United States District Court for the Southern District of New York (Jones, *J.*) dismissing their personal injury action. Plaintiffs claim that defendant Eleftheria Lelakis breached an "assumed duty" to protect Maria Tavarez at the moment she fell from a stepladder, sustaining serious injury in Lelakis's apartment. Finding that plaintiffs had provided no evidence from which a jury could reasonably find that Lelakis had assumed a duty to protect Tavarez from the accident, the district court dismissed the complaint. We agree and affirm.

### Background

Maria Tavarez ("Tavarez") was hired as a housekeeper by the Galleria Condominium ("the Galleria") for a three-month trial period beginning in January 1994. Tavarez's principal task was to clean the interiors of the condominium's apartments according the specifications of the residents. During the first two weeks of her employment at the Galleria, Tavarez received instruction in the use of the Galleria's housekeeping equipment, including four-step, four-foot tall aluminum stepladders. Tavarez used a stepladder about two to three times a week during the course of her employment at the Galleria.

*The Honorable Jane A. Restani, Judge of the United States Court of International Trade, sitting by designation.

On April 26, 1994, Tavarez was assigned to clean apartment 21–B, owned by defendant Eleftheria Lelakis. When Tavarez arrived at the apartment at 10:00 A.M., Lelakis told her that her tasks would include cleaning objects in the overhead kitchen cabinets. Tavarez retrieved a stepladder for the job. According to Tavarez, she and Lelakis worked together for the next two hours. They first undertook to clean the kitchen cabinets. Tavarez wiped the cabinets and handed most of the objects they contained down to Lelakis who rinsed and dried them and handed them back. With heavier objects, Tavarez descended while Lelakis steadied the ladder.

After completing the cabinets, Tavarez moved the ladder and undertook to clean the area at the juncture of the ceiling and the cabinet. Tavarez claims that while she wiped the ceiling, and indeed during almost the entire period she worked in the apartment, Lelakis steadied the ladder which "was shaking, moving." Around noon the telephone rang. Tavarez alleges that Lelakis said, "excuse me, I have to go and answer the phone," then left the kitchen. Nevertheless, Tavarez "continued to work in the same area when [she] felt the ladder start to move." Within a period of "less than a minute or thirty seconds" after Lelakis's departure, Tavarez fell from the third step. Lelakis, informed of Tavarez's fall by her son, promptly summoned assistance. Tavarez suffered a compression fracture of the L1 vertebral body for which a vertebrectomy was ultimately required.

Tavarez received worker's compensation benefits and all of her medical expenses have been borne by the Galleria's worker's compensation carrier. In late 1994, Tavarez and her husband filed this action against Lelakis in New York Supreme Court, alleging negligence and seeking $10 million in damages for Tavarez's injuries and an additional $1 million for Mr. Tavarez for loss of services. Lelakis impleaded the Galleria, and then removed the action to the Southern District of New York, basing federal jurisdiction on diversity of citizenship.

After discovery, Lelakis moved for summary judgment. The district court initially denied the motion, finding that Tavarez had alleged facts sufficient to support a negligence action under an "assumed duty" theory. Upon Lelakis's motion for reargument, however, the court reversed itself, citing "factual matters and controlling decisions that the Court inadvertently overlooked when rendering its last decision." The court determined that, prior to the fall, Lelakis effectively communicated to Tavarez her abandonment of whatever duty she had previously assumed. Because Tavarez "was free to step down" when Lelakis left to answer the phone and because "Lelakis neither directed Tavarez to keep working nor left her teetering," the court concluded that by announcing her departure, "Lelakis discharged herself of the duty to keep the ladder still *before it wobbled and Tavarez fell.*" (emphasis in original). Lelakis owed Tavarez no duty at the time of the accident, and therefore, held the district court, she cannot be held liable.

## Discussion

Plaintiffs do not allege that Lelakis owed Tavarez any general duty as an employee, licensee or invitee. Instead, plaintiffs' theory is that by undertaking to steady the ladder, Lelakis assumed a duty of care to monitor and protect Tavarez while Tavarez worked upon it. The district court agreed but further found as a matter of law that Lelakis's assumed duty terminated when she told Tavarez she was leaving to answer the telephone. The lone question before us on appeal is whether any reasonable interpretation of the facts (resolving disputed questions in favor of plaintiffs) allows the conclusion that Lelakis owed Tavarez an assumed duty of care to steady the ladder at the time of the accident.

The New York decisions confirm that "an assumed duty ... may arise once a person undertakes a certain course of conduct upon which another relies." *Heard v. City of New York*, 82 N.Y.2d 66, 72, 603 N.Y.S.2d 414, 417, 623 N.E.2d 541, 544 (1993) (internal quotation marks omitted). A defendant owes an assumed duty of care when his or her conduct "somehow place[s] plaintiff ... in a more vulnerable position than he would have been in had [defendant] never

taken any action at all." *Nallan v. Helms-ley–Spear, Inc.,* 50 N.Y.2d 507, 522, 429 N.Y.S.2d 606, 615, 407 N.E.2d 451, 460 (1980). However, assumed duties arise only where (1) the failure to exercise due care increases the risk of harm to the plaintiff or (2) the harm is suffered because of the plaintiff's reliance on the undertaking. *See* Restatement (Second) Torts § 323 at 137 cmt. c (1965) (assumed duty attaches where "the actual danger of harm to the other has been increased by the partial performance, or ... the other, in reliance upon the undertaking, has been induced to forego other opportunities of obtaining assistance"); *see also Heard,* 82 N.Y.2d at 73, 603 N.Y.S.2d at 417, 623 N.E.2d at 544 (relying on Restatement formulation); *Nallan,* 50 N.Y.2d at 523, 429 N.Y.S.2d at 616, 407 N.E.2d 451 at 460 (same). Plaintiffs bear the burden of establishing either the increased risk of harm or detrimental reliance. *See* Restatement (Second) Torts § 323; *Gunsalus v. Celotex Corp.,* 674 F.Supp. 1149, 1157 (E.D.Pa.1987); *Jefferson County Sch. Dist. v. Justus,* 725 P.2d 767, 773 (Colo.1986) (en banc).

(1) We think it far from clear that Lelakis could properly be held to have assumed an actionable duty. Tavarez did not testify that she remained on the ladder without seeking some other form of security in reliance on Lelakis's undertaking to hold it, nor that she was in greater jeopardy because of Lelakis's intervention. There was no evidence that the ladder was so wobbly as to be defective, or that Tavarez mounted the ladder in reliance on Lelakis's undertaking to secure it.[1] Tavarez thus provides no basis to conclude that she perceived the ladder as defective, such that she would be unwilling or reluctant to climb upon it without Lelakis's presence (much less that she communicated this to Lelakis).

▪ (2) Even if Lelakis assumed some duty on which Tavarez relied, the assumed duty clearly was not to hold the ladder constantly. At most any assumed duty could extend only to steadying the ladder at moments when Tavarez engaged in risky activi-

ties. Although Tavarez testified at one point that Lelakis held the ladder continuously for two hours, Tavarez herself conclusively contradicted this by testifying that for much of the morning, Tavarez handed objects from the cabinet to Lelakis who then washed and dried them and handed them back up to Tavarez to be returned to the cabinets. Lelakis was not holding the ladder when she was engaged in those activities. Because Tavarez remained on the ladder throughout the time Lelakis was receiving, washing, drying and returning the objects, Tavarez cannot establish either that Lelakis undertook to hold the ladder steady at all times or that Tavarez remained on the ladder only in reliance on such an undertaking.

▪ (3) Finally, regardless of the scope of the assumed duty, the claim fails because any duty voluntarily assumed by Lelakis was terminated and discharged prior to Tavarez's fall. As the district court recognized, assumed duties are not of infinite duration; generally, they may be abandoned at will. On the other hand,

> [w]here ... the actor's assistance has put the other in a worse position than he was in before, ... the actor is not free to discontinue his services where a reasonable man would not do so. He will then be required to exercise reasonable care to terminate his services in such a manner that there is no unreasonable risk of harm to the other, or to continue them until they can be so terminated.

Restatement (Second) Torts, § 323 cmt. c; *see also Nallan,* 50 N.Y.2d at 523, 429 N.Y.S.2d at 615, 407 N.E.2d at 460; *accord* W. Page Keeton *et. al,* Prosser & Keeton on The Law of Torts, § 56, at 382 (5th ed.1984).

Tavarez's testimony establishes that Lelakis terminated and discharged any duty she may have previously assumed by announcing her departure to answer the telephone. There was no evidence that Lelakis left Tavarez in an unreasonably precarious position, or otherwise exposed to an unreasonable risk of harm. Nor was there evidence that Tava-

---

1. We recognize that Lelakis claimed the ladder was "shaking, moving," but this is not uncharacteristic of ladders. There was no evidence that

Tavarez's ladder was any less steady than an ordinary functioning stepladder.

rez could not have safely descended from the ladder when Lelakis left. When Lelakis withdrew, Tavarez decided to continue cleaning on the ladder with full awareness that Lelakis was no longer present. According to Tavarez, the ladder did not start to move until after Lelakis's departure, and she estimated that thirty to sixty seconds passed after Lelakis's departure before she fell. We therefore agree with the district judge that Lelakis was free to terminate any assistance, and that her withdrawal neither exposed Tavarez to unreasonable risk nor breached any duty owed to her.

### Conclusion

Plaintiffs submitted no evidence from which a jury could properly find that Lelakis's departure breached a duty of care owed to Tavarez. Lelakis was therefore entitled to judgment as a matter of law. The judgment of the district court is affirmed.