578 A.2d 417

**Margaret W. HITE, Executrix of the Estate of Robert V. Hite, Deceased, Appellant,**

v.

**R.J. REYNOLDS TOBACCO COMPANY, Philip Morris, Inc., the American Tobacco Company, McKeesport Candy Company and B. Lipsitz Company, Appellees.**

Superior Court of Pennsylvania.

Argued Nov. 15, 1989.

Filed July 12, 1990.

Ellen M. Viakley, Pittsburgh, for appellant.

Edward F. Mannino, Philadelphia, for American Tobacco, appellee.

Before ROWLEY, WIEAND and HOFFMAN, JJ.

WIEAND, Judge:

The issue of first impression before the Court in this appeal is whether state tort remedies for injury or death caused by cigarette smoking have been preempted by the Federal Cigarette Labeling and Advertising Act[1] which became effective January 1, 1966.

Robert Hite, a pharmacist, died on May 29, 1985, at the age of fifty. The cause of death was lung cancer brought on by cigarette smoking. Margaret W. Hite, the widow of the decedent and administratrix of his estate, commenced wrongful death and survival actions against R.J. Reynolds

---

1. 15 U.S.C. §§ 1331 et seq.

Tobacco Company, Phillip Morris, Inc. and The American Tobacco Company, the manufacturers of cigarettes smoked by the decedent between 1950 and the date of his death. The complaint contained averments that the defendant tobacco companies had been negligent or were strictly liable because of defectively designed products and/or a failure to warn of the dangers of cigarette smoking. The trial court held, however, that the claim had been preempted, effective January 1, 1966, by the Federal Cigarette Labeling and Advertising Act. Because the decedent had not started smoking cigarettes manufactured by American Tobacco Company until sometime in 1970, therefore, the trial court entered judgment on the pleadings in favor of American Tobacco Company.[2] The present appeal is from the order entering judgment on the pleadings in favor of The American Tobacco Company.

The standard for reviewing a judgment on the pleadings was set forth in *Klebach v. Mellon Bank, N.A.*, 388 Pa.Super. 203, 565 A.2d 448 (1989), as follows:

> Our scope of review is plenary when reviewing a trial court's decision to grant judgment on the pleadings. *Keystone Automated Equipment v. Reliance Insurance Co.*, 369 Pa.Super. 472, 475, 535 A.2d 648, 649 (1988), *allocatur den.*, 519 Pa. 654, 546 A.2d 59 (1988). Our appellate role is to determine if the action of the trial court was based on a clear error of law or whether there were facts disclosed by the pleadings which should properly go to the jury. *Id.; Vogel v. Berkley*, 354 Pa.Super. 291, 296, 511 A.2d 878, 880 (1986). An appellate court

---

**2.** The final order entered by the trial court was as follows:

The order of June 13, 1988 as to the defendant The American Tobacco Company is amended to read as follows:

It is ORDERED, ADJUDGED AND DECREED that the motion of the defendants for judgment on the pleadings be and the same hereby is granted; however, the second amended complaint of the plaintiff against The American Tobacco Company is dismissed as to it but shall continue as a complaint against all the other defendants as to pre-January 1, 1966 conduct of said remaining defendants.

Further, the Prothonotary is directed to enter Judgment in favor of The American Tobacco Company and against the Plaintiff upon payment of the appropriate fee, if any.

must confine its consideration to the pleadings and relevant documents, accept as true all well pleaded statements of fact by the party against whom judgment was granted, and consider only those facts that the party against whom judgment was granted specifically admits. *Keystone Automated Equipment, supra* 369 Pa.Super. at 475, 535 A.2d at 649. However, we may not consider conclusions of law or unjustified inferences asserted by either party. *Jones v. Travelers Insurance Company,* 356 Pa.Super. 213, 216, 514 A.2d 576, 578 (1986), *allocatur den.,* Jan. 15, 1987. Judgment on the pleadings may only be granted where no material facts are in dispute and the case is so free from doubt that a trial would clearly be a fruitless exercise. *Keystone Automated Equipment, supra* 369 Pa.Super. at 475, 535 A.2d at 649.

*Id.* 388 Pa.Super. at 204, 565 A.2d at 449. See also: *Groff v. Pete Kingsley Bldg., Inc.,* 374 Pa.Super. 377, 382, 543 A.2d 128, 130 (1988).

■ The policy of the Congress and the purpose of the Federal Cigarette Labeling and Advertising Act is to

establish a comprehensive Federal program to deal with cigarette labeling and advertising with respect to any relationship between smoking and health, whereby—

(1) the public may be adequately informed that cigarette smoking may be hazardous to health by inclusion of a warning to that effect on each package of cigarettes; and

(2) commerce and the national economy may be (A) protected to the maximum extent consistent with this declared policy and (B) not impeded by diverse, nonuniform, and confusing cigarette labeling and advertising regulations with respect to any relationship between smoking and health.

15 U.S.C. § 1331 (1982).

The Act also preempts state law pertaining to the duty to warn required of cigarette manufacturers and proscribes

the imposition of additional notice requirements by the states.[3]  The Act provides:

(a) No statement relating to smoking and health, other than the statement required by section 1333 of this title, shall be required on any cigarette package.

(b) No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter.

15 U.S.C. § 1334 (1982).

In *Cipollone v. Liggett Group, Inc.,* 789 F.2d 181 (3d Cir.1986), *cert. denied,* 479 U.S. 1043, 107 S.Ct. 907, 93 L.Ed.2d 857 (1987), the Court of Appeals for the Third Circuit analyzed the preemptive effect of the Labeling Act on state tort claims and concluded that "claims relating to smoking and health that result in liability for noncompliance with warning, advertisement, and promotion obligations other than those prescribed in the Act have the effect of tipping the Act's balance of purposes and therefore actually conflict with the Act." *Id.* at 187.  The Court reasoned that the statement of the Act's purposes represented a

carefully drawn balance between the purposes of warning the public of the hazards of cigarette smoking and protecting the interests of national economy.  *See [Banzhaf v. F.C.C.,* 405 F.2d 1082, 1090 (D.C.Cir.1968) ].  Moreover,

---

**3.** The original warning required was as follows: "Caution: Cigarette Smoking May Be Hazardous to Your Health," 15 U.S.C. § 1333 (1970). Congress amended the Act in 1969 to require the warning to read: "Warning: The Surgeon General Has Determined That Cigarette Smoking Is Dangerous to Your Health." 15 U.S.C. § 1333 (1976). In 1984, Congress replaced prior warning requirements with rotational warnings providing:

SURGEON GENERAL'S WARNING: Smoking Causes Lung Cancer, Heart Disease, Emphysema, And may Complicate Pregnancy.
SURGEON GENERAL'S WARNING: Quitting Smoking Now Greatly Reduces Serious Risks to Your Health.
SURGEON GENERAL'S WARNING: Smoking by Pregnant Women May Result in Fetal Injury, Premature Birth, and Low Birth Weight.
SURGEON GENERAL'S WARNING: Cigarette Smoke Contains Carbon Monoxide.

See: 15 U.S.C. § 1333(a)(1).

the preemption provision of section 1334, read together with section 1331, makes clear Congress's determination that this balance would be upset by either a requirement of a warning other than that prescribed in section 1333 or a requirement or prohibition based on smoking and health "with respect to the advertising or promotion" of cigarettes. *See* 15 U.S.C. § 1334.

*Id.* at 187. Further, the Court said, "duties imposed through state common law damage actions have the effect of requirements that are capable of creating 'an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.*, quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581, 587 (1941). Therefore, the Court concluded

[T]he Act preempts those state law damage actions relating to smoking and health that challenge either the adequacy of the warning on cigarette packages or the propriety of a party's actions with respect to the advertising and promotion of cigarettes. [W]here the success of a state law damage claim necessarily depends on the assertion that a party bore the duty to provide a warning to consumers in addition to the warning Congress has required on cigarette packages, such claims are preempted as conflicting with the Act.

*Id.* at 187 (footnote omitted). The reasoning of *Cipollone* is compelling.[4] See also: *Gunsales v. Celotex Corp.*, 674 F.Supp. 1149 (E.D.Pa.1987) (claims based upon failure to warn of dangers of smoking preempted following effective date of Labeling Act).

Other courts have reached the same conclusion. See: *Pennington v. Vistron Corp.*, 876 F.2d 414 (5th Cir.1989) (Labeling Act impliedly preempts post 1965 claims challenging adequacy of warnings on cigarette packages, or suggesting duty on tobacco companies to provide warnings in addition to warning mandated by Congress, or questioning

---

**4.** Congress has recently enacted a law requiring warning labels on packages of smokeless tobacco, and this law specifically provides that it does not relieve any person from liability at common law or under state law. See: 15 U.S.C. § 4406(c).

propriety of tobacco companies' advertising or promotional activities); *Roysdon v. R.J. Reynolds Tobacco Co.*, 849 F.2d 230 (6th Cir.1988) (Labeling Act impliedly preempts state law failure to warn claims); *Stephen v. American Brands, Inc.*, 825 F.2d 312 (11th Cir.1987) (Labeling Act preempts claim of failure to provide adequate warning of risks associated with smoking); *Palmer v. Liggett Group, Inc.*, 825 F.2d 620 (1st Cir.1987) (Labeling Act impliedly preempts state law smoking and health related claims challenging adequacy of Federal warning or propriety of promotion or advertising); *Kotler v. American Tobacco Co.*, 685 F.Supp. 15 (D.Mass.1988) (same); *Gianitsis v. American Brands, Inc.*, 685 F.Supp. 853 (D.N.H.1988) (same); *Forster v. R.J. Reynolds Tobacco Co.*, 437 N.W.2d 655 (Minn.1989) (Labeling Act impliedly preempts state law tort claims based on state imposed duty to warn); *Phillips v. R.J. Reynolds Industries, Inc.*, 769 S.W.2d 488, 490 (Tenn.App.1988) (Labeling Act preempts plaintiff's product liability action alleging inadequate warning).

We hold, therefore, that health related claims based on a failure to give adequate warning of the dangers inherent in cigarette smoking or on promotional activities of the manufacturer or seller have been impliedly preempted by the Federal Cigarette Labeling and Advertising Act.

■ Appellant's design defect claim, however, has not been preempted by the Labeling Act. Courts which have analyzed this question agree that the Labeling Act's preemptive effect is limited solely to claims based on the adequacy of warnings and advertising or promotional activity of the cigarette manufacturers. See: *Pennington v. Vistron Corp., supra; Cipollone v. Liggett Group, Inc., supra* (Labeling Act does not preempt all state tort claims); *Kotler v. American Tobacco Co., supra* (tobacco companies not immune from liability on grounds which do not challenge adequacy of warnings or propriety of advertising or promotional activities); *Gianitsis v. American Brands, Inc., supra; Cippollone v. Liggett Group, Inc.*, 649 F.Supp. 664 (D.N.J.1986); *Forster v. R.J. Reynolds Tobacco*

*Co.*, *supra* (except for duty to warn, there is no federal preemption of claims based on defective condition of product); *Dewey v. Brown & Williamson Tobacco Co.*, 225 N.J.Super. 375, 542 A.2d 919 (1988) (cause of action alleging design defect not preempted).

■ Although design defect causes of action have not been preempted by the Federal Act, Pennsylvania courts have refused to recognize causes of action for products which are legal and not defectively manufactured, but inherently dangerous, except in those cases in which there has been a failure to warn of the dangerous qualities thereof. Section 402A of the Restatement (Second) of Torts was adopted by the Pennsylvania Supreme Court in *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966). "Section 402A recognizes liability without fault and properly limits such liability to defective products. The seller of a product is not responsible for harm caused by such inherently dangerous products as whiskey or knives that despite perfection in manufacture, design or distribution, can cause injury." *Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 95, 337 A.2d 893, 899 (1975) (plurality opinion). These insights were based on comment i to Section 402A, which instructs as follows:

i. **Unreasonably dangerous.** The rule stated in this Section applies only where the defective condition of the product makes it unreasonably dangerous to the user or consumer. Many products cannot possibly be made entirely safe for all consumption, and any food or drug necessarily involves some risk of harm, if only from over-consumption. Ordinary sugar is a deadly poison to diabetics, and castor oil found use under Mussolini as an instrument of torture. That is not what is meant by "unreasonably dangerous" in this Section. The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics. Good whiskey is not unreasonably dangerous merely because it will make

some people drunk, and is especially dangerous to alcoholics; but bad whiskey, containing a dangerous amount of fusel oil, is unreasonably dangerous. *Good tobacco is not unreasonably dangerous merely because the effects of smoking may be harmful; but tobacco containing something like marijuana may be unreasonably dangerous.* Good butter is not unreasonably dangerous merely because, if such be the case, it deposits cholesterol in the arteries and leads to heart attacks; but bad butter, contaminated with poisonous fish oil, is unreasonably dangerous. (emphasis added).

See also: *Pegg v. General Motors Corp.*, 258 Pa.Super. 59, 391 A.2d 1074 (1978) (equally divided court held manufacturer not liable because product inherently dangerous); *Gianitsis v. American Brands, Inc., supra; Dewey v. Brown & Williamson Tobacco Co., supra.*

Appellant in the instant case does not contend that a better design is available for the cigarette company's product. She contends only that appellee's product is so inherently dangerous that the manufacturer should be made liable for the mischief it causes. She would accomplish this by applying the risk-utility approach to design defect cases. Thus far, however, the Pennsylvania courts have resisted such an approach in design defect cases.[5]

In *Azzarello v. Black Bros. Co., Inc.*, 480 Pa. 547, 391 A.2d 1020 (1978), the Supreme Court held that the "words 'unreasonably dangerous' have no independent significance and merely represent a label to be used where it is determined that the risk of loss should be placed on the supplier." *Id.*, 480 Pa. at 556, 391 A.2d at 1025. Whether the risk of loss is to be placed on the supplier is a question of law for the court. *Id.* See also: *Mackowick v. Westinghouse Electric Corp.,* —— Pa. ——, 575 A.2d 100 (1990). However, as we have observed, *Berkebile* suggests that the risk of loss will not be placed on the supplier or manufactur-

---

**5.** A risk-utility analysis was articulated and espoused by the Dissenting Opinion in *Dambacher by Dambacher v. Mallis*, 336 Pa.Super. 22, 71, 485 A.2d 408, 434 (1984).

er where an inherent danger is within the contemplation of the buyer, i.e., where there is no element which will remove the risks inherent in its intended use.

In *Lewis v. Coffing Hoist Division, Duff–Norton Co., Inc.*, 515 Pa. 334, 528 A.2d 590 (1987), the Supreme Court acknowledged that the risk-utility approach has been adopted by some courts in design defect cases. However, in Pennsylvania, the Court said, the approach to design defect cases is that articulated in *Azzarello v. Black Bros. Co., supra. Id.*, 515 Pa. at 340, 528 A.2d at 593. The risk-utility approach was not embraced.

The federal courts have recognized the Pennsylvania Supreme Court's refusal to embrace the risk-utility analysis and have held that cigarette claims based upon such an approach are not cognizable in Pennsylvania. In *Miller v. Brown & Williamson Tobacco Corp.*, 679 F.Supp. 485 (E.D.Pa.1988), the court held that under Pennsylvania law the risk-utility theory of liability was inapplicable; and, therefore, an action against a cigarette manufacturer for death caused by cigarette smoking on grounds that cigarettes gave no benefit to society but imposed great risk could not be maintained. Similarly, in *Gunsales v. Celotex Corp., supra*, the United States District Court for the Eastern District of Pennsylvania reasoned that the risk-utility test had not been adopted in Pennsylvania and held that tobacco was not per se a "defective" product merely because it caused or increased the risk of lung cancer and other life threatening diseases. *Id.* at 1158–1159.

Under the present state of Pennsylvania law, therefore, the only cognizable claim asserted by appellant is the failure of The American Tobacco Company to give adequate warning of the dangers of cigarette smoking. This is so whether she proceeds on theories of negligence or strict liability. Such a claim, however, cannot be pursued because notice requirements have been preempted by the Federal Cigarette Labeling and Advertising Act. Therefore, the

trial court properly entered judgment on the pleadings in favor of The American Tobacco Company.

Judgment affirmed.