**Theresa CARTER, as the personal representative of The Estate of Katie W. Carter,**

v.

**PHILIP MORRIS CORPORATION and Rite Aid Corporation of Pennsylvania.**

No. 99–4991.

United States District Court, E.D. Pennsylvania.

Feb. 23, 2000.

Marc P. Weingarten, Greitzer & Locks, Philadelphia, PA, for Theresa Carter.

Norbert F. Bergholtz, Dechert, Price & Rhoads, Philadelphia, PA, for Philip Morris Corp.

Bruce S. Haines, Hangley, Aronchick, Segal & Pudlin, Philadelphia, PA, for Rite Aid of Pennsylvania, Inc.

### MEMORANDUM

DALZELL, District Judge.

The plaintiff here brings allegations of negligence and products liability against a manufacturer and seller of cigarettes. We now consider her motion to remand this case to Pennsylvania state court.

### I. Factual and Procedural Background

While we will detail some of the particulars of the Complaint as necessary below, the claims plaintiff Theresa Carter ("Carter") makes here can be simply stated. She alleges that her decedent, Katie W. Carter, died from lung cancer and other injuries Philip Morris Corporation caused with its cigarettes that defendant Rite Aid Corporation of Pennsylvania sold her. Carter alleges negligence (Count 1), strict products liability (Count 3), and civil conspiracy (Count 5) against Philip Morris, and similarly alleges negligence (Count 2) and strict products liability (Count 4) against Rite Aid.[1]

This case was originally filed in the Court of Common Pleas of Philadelphia County, and Philip Morris subsequently removed it here. In the notice of removal, Philip Morris argued that while Rite Aid was, like Carter, a Pennsylvania citizen, this fact did not destroy diversity because Rite Aid was in fact fraudulently joined for the sole purpose of defeating federal diversity jurisdiction.

Carter has now filed for remand under 28 U.S.C. § 1447(c)[2], arguing that there was no fraudulent joinder, and that consequently the parties are non-diverse and no basis for federal jurisdiction exists.[3]

### II. Analysis

#### A. Legal Standards for Remand

In general, "the removal statute should be strictly construed, and all doubts should be resolved in favor of remand." *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir.1985). When a non-diverse party has been joined as a defendant, the only way (absent a federal question[4]) for a removing defendant to avoid remand is to demonstrate that the non-diverse party was fraudulently joined, and, in so demonstrating, the removing party bears a "heavy burden of persuasion." *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir.1992). "Joinder [of a party] is fraudulent where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." *Boyer v.*

---

1. Count 5, alleging civil conspiracy, may also be aimed at Rite Aid. In paragraph 30 of the Complaint, Carter provides a list of the alleged conspirators. The list includes twelve specific entities, one of which is Philip Morris, and one generic entity, labeled "Other unknown coconspirators." This list might lead us to the conclusion that the civil conspiracy count-which is not labeled as to which of the defendants it pertains-is not directed at Rite Aid. However, in the text of that count, for example at paragraphs 40 and 41, the Complaint refers to "defendants" in the plural, necessarily referring to both Rite Aid and Philip Morris. For her part, the plaintiff's pleadings with respect to remand make almost no reference to the civil conspiracy count, and so we will not consider it further.

2. 28 U.S.C. § 1447(c) provides in pertinent part: "If at any time before final judgment [of a removed case] it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

3. That is, there is no dispute as to the pertinent states of citizenship or that the jurisdictional amount would not be met. Carter also alleges that the removal was improper because Rite Aid did not join in the removal notice. However, because Carter concedes that a fraudulently joined defendant need not join in the notice of removal, the question of fraudulent joinder is dispositive standing alone, and we consequently will not further consider the issue of joinder in the removal.

4. Defendants do not allege that there is federal question jurisdiction here.

*Snap–On Tools Corp.*, 913 F.2d 108, 111 (3d Cir.1990) (internal quotations omitted).

In making this inquiry, we must resolve all contested facts in the plaintiff's favor and must equally resolve all uncertainties as to the current state of the applicable substantive law in her favor. *See id.* Moreover, "if there is even a possibility that a state court would find that the complaint states a cause of action against any one of the [non-diverse] resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Batoff,* 977 F.2d at 851 (quoting *Boyer,* 913 F.2d at 111).

Here, therefore, in deciding whether Rite Aid was fraudulently joined, we must examine Carter's Complaint[5] and assess whether she states a colorable cause of action against Rite Aid under Pennsylvania law. Importantly, though, our inquiry must not be too deep. Simply because we come to believe that, at the end of the day, a state court would dismiss the allegations against a defendant for failure to state a cause of action does not mean that the defendant's joinder was fraudulent. *See Batoff,* 977 F.2d at 852. In this context, our familiar standards of analysis under Fed. R.Civ.P. 12(b)(6) are inapplicable and, instead, the test is whether the plaintiff's claims are not even "colorable", which is to say, "wholly insubstantial and frivolous". *Id.*[6] Consequently, if we must make a penetrating or intricate analysis of state law in order to determine if the claim is colorable then it is likely that the claim is indeed colorable and not frivolous. *See id.* at 853.

With these standards in mind, we now examine Carter's allegations against Rite Aid.

**5.** The fraudulent joinder analysis focuses on the Complaint as it existed at the time of removal, *see Batoff,* 977 F.2d at 851–52. As Carter has made no effort to amend her Complaint, there is no dispute as to the version of the Complaint to consult.

**6.** We also observe that the converse is true-if we decide that the joinder is indeed fraudu-

**B.** *Assessment of Carter's Claims Against Rite Aid*

### 1. *Strict Liability Claims*

In Count 4 of her Complaint, Carter brings allegations of strict products liability against Rite Aid. Philip Morris argues that such claims are not colorable under Pennsylvania tort law because, it says, cigarettes are not "defective" or "unreasonably dangerous" as those terms are used in section 402A of the Restatement (Second) of Torts, which Pennsylvania has adopted. In particular, Philip Morris argues that Carter has not alleged *any* defect in the Complaint. In response, Carter contends that, to the extent such an allegation is needed, the Complaint does in fact allege a defect.

Obviously, the solution to this controversy must begin with the language of the Complaint. Count 4 consists of two paragraphs, 27 and 28. In paragraph 27, Carter incorporates the allegations made in paragraph 26 of Count 3[7], namely that the cigarettes in question were defectively designed in that, *inter alia,* there was "[i]nsufficient reduction in tar and other carcinogens by dilution and filtration" (¶ 26(a)), "[l]ack of distinctly marked vent holes" (¶ 26(b)), and "[f]ailure to list accurately and legibly the ingredients contained within the cigarette and the smoke therefrom, including known carcinogens" (¶ 26(n)). Next, paragraph 28 alleges that:

> The cigarette product sold by defendant [Rite Aid] was defective and unreasonably dangerous to foreseeable users for the following reasons:
>
> a. the cigarette product when used as intended caused or contributed to the illnesses listed in above paragraph 6;

lent, then we must be prepared to dismiss all claims against Rite Aid. That is, having decided that the complaint states no "colorable" claim against Rite Aid, then *a fortiori* we must hold that these claims fail to meet the Fed. R.Civ.P. 12(b)(6) threshold.

**7.** Count 3 alleges strict liability against Philip Morris.

b. The cigarette product failed to perform as safely as an ordinary consumer would expect when used as intended or in a manner reasonably foreseeable by the plaintiff's decedent.

■ As noted above, Pennsylvania has adopted section 402A of the Restatement (Second) of Torts providing for strict liability for the seller of a product "in a defective condition unreasonably dangerous to the user or consumer." *Lewis v. Coffing Hoist Div., Duff–Norton Co.*, 515 Pa. 334, 528 A.2d 590, 592 (1987) (quoting *Restatement (Second) of Torts* § 402A). A product is defective "when it leaves the supplier's control lacking any element necessary to make it safe for its intended use." *Lewis*, 528 A.2d at 593 (citing *Azzarello v. Black Bros. Co.*, 480 Pa. 547, 391 A.2d 1020, 1027 (1978)). Naturally, that a product is alleged to have caused injury does not, by itself, establish a defect, and a manufacturer is not an insurer of all injuries its products cause, *see Azzarello*, 391 A.2d at 1024; *Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 337 A.2d 893, 898–99 (1975). Moreover, the mere allegation that the product is "so inherently dangerous that the manufacturer should ·be made liable for the mischief it causes" is not sufficient to allow a claim to go forward, *Hite v. R.J. Reynolds Tobacco Co.*, 396 Pa.Super. 82, 578 A.2d 417, 420–21 (1990) (holding that Pennsylvania courts do not recognize the "risk-utility" test in assessing such cases). Under this established jurisprudence, Philip Morris says, we must find that Carter has no colorable strict liability claim against Rite Aid because Carter seeks to label cigarettes as "defective" merely because they are inherently dangerous.

■ After an examination of the Complaint and Pennsylvania tort law, we find that Carter has indeed made a colorable allegation against Rite Aid. As an initial matter, we note that there does not appear to be any Pennsylvania case directly on point.[8] The parties have cited only one Pennsylvania case with a tobacco company as a defendant, *Hite v. R.J. Reynolds Tobacco Co.*, 396 Pa.Super. 82, 578 A.2d 417, (1990), a case in which the Pennsylvania Superior Court held, *inter alia*, that, as outlined above, the "risk-utility" method of analysis was not sufficient to show a defective cigarette product where the plaintiff argues that the product is "inherently dangerous" without "contend[ing] that a better design is available for the cigarette company's product." *Id.* 578 A.2d at 421.[9]

8. Obviously, in considering state law questions, we cannot hope always to have ·a state case on all fours with the situation before us. With particular reference to the posture of this case, we recognize that to convince us that the plaintiff has no colorable claim the defendant need not present to us a case with precisely comparable facts holding that a comparable plaintiff's claims are not colorable. On the other hand, tobacco litigation is perhaps not easily compared to torts involving other products, and thus it is significant to us that Pennsylvania courts appear not to have had an opportunity to address the precise question before us. Also, since the burden here is on the defendant, to the extent that we must perform substantial adaptation and analogizing in order to apply to our case the case law defendant cites, the very complexity of such an enterprise is also significant to our removal inquiry.

9. Philip Morris also cites to two federal District Court decisions that, together with *Hite*, allegedly establish "settled principles of strict liability law in Pennsylvania." Def.'s Mem. of Law in Opp'n to Pl.'s Mot. to Remand at 12 n. 6. These opinions, which do involve claims against cigarette manufacturers decided under Pennsylvania law, are *Gunsalus v. Celotex Corp.*, 674 F.Supp. 1149 (E.D.Pa.1987) and *Miller v. Brown & Williamson Tobacco Corp.*, 679 F.Supp. 485 (E.D.Pa.1988). Philip Morris relies on these two cases to support a number of legal propositions, including that tobacco is not a defective product simply because it may cause lung cancer. While we have reviewed these cases closely, and certainly have respect for the conclusions of other members of this Court, these decisions nonetheless represent *Erie/Klaxon* guesswork in the absence· of controlling authority from the Pennsylvania Supreme Court, and we are abundantly aware of the associated peril Judge Sloviter has elsewhere identified. *See* Dolores K. Sloviter, *A Federal Judge Views Diversity Jurisdiction Through the Lens of Federalism*, 78 Va.L.Rev. 1671, 1679–81 n. 53

We are therefore left to extrapolate from the more general Pennsylvania strict liability tort law outlined above.

The centerpiece of Philip Morris's argument appears to be that in order to carry forward a product liability claim, the plaintiff needs to allege some defect, and may not simply argue that there is a danger inherent in the product. Here, however, Carter clearly has made such averments. As described above, the allegations in the complaint include claims that the cigarettes were defective in that they lacked distinctly marked vent holes and did not sufficiently reduce tar and other carcinogens by dilution and filtration. Notwithstanding that other portions of the strict liability claim might be subsumed by an "inherently dangerous" theory [10], it remains that Carter has alleged specific defects in the manufacture of the cigarettes,

and not in tobacco generally, and such a claim is colorable under Pennsylvania law.[11]

## 2. Negligence Claims[12]

Count 2 of the Complaint contains Carter's negligence allegations against Rite Aid. Essentially, Carter alleges that: (1) Rite Aid had or should have had knowledge of the harmful and addictive nature of cigarettes (¶ 21); (2) Rite Aid had the duty to warn consumers about the harmful and addictive nature of the cigarettes it sold and had the duty to sell a product that was reasonably safe (¶ 22); and (3) Rite Aid breached these duties by failing to warn and by selling a product that was in fact not reasonably safe (¶ 23). Philip Morris argues that failure to warn allegations are preempted by federal law, and that the allegation that Rite Aid sold a

(1992) (discussing the difficulty of making "Erie guesses" and citing specific cases where federal predictions of state supreme courts' rulings proved wrong). Though these federal cases have been subsequently cited by lower Pennsylvania courts, see, e.g., Hite, 578 A.2d at 421 (citing Gunsalus and Miller), we cannot find that they "establish" Pennsylvania law.

Moreover, Gunsalus and Miller would not in any event be dispositive here. Both opinions were written at the summary judgment stage—naturally presenting a much different standard than extant here—and both concluded that the plaintiff's case failed because of a failure to show any evidence of defective design, see Miller, 679 F.Supp. at 488–89; Gunsalus, 674 F.Supp. at 1158–59. Both opinions also rejected the application of the "risk-utility" analysis to Pennsylvania tort cases, see Miller, 679 F.Supp. at 489; Gunsalus, 674 F.Supp. at 1159. Our job here is merely to assess whether a colorable claim is made out, and the holdings in these cases, dependent as they are on the evidence then before those courts, do not compel us to conclude that Carter has not stated a colorable claim.

10. The strict liability count also includes allegations which might fall under a "failure to warn" rubric, about which more below.

11. In several of the cases the parties cite, much is made of comment i to section 402A of the Restatement, which states, as an example of what is meant by "unreasonably dan-

gerous" as that phrase is used in the section, that

> The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.... Good tobacco is not unreasonably dangerous merely because the effects of smoking may be harmful; but tobacco containing something like marijuana may be unreasonably dangerous.

See, e.g., Gunsalus, 674 F.Supp. at 1158 (quoting Restatement (Second) of Torts § 402A cmt. i). With respect to this, we first observe that "[e]ven where [the Pennsylvania Supreme Court] has 'adopted' a section of the Restatement [ (Second) of Torts] as the law of Pennsylvania, the language is not to be considered controlling in the manner of a statute," Coyle v. Richardson–Merrell, Inc., 526 Pa. 208, 584 A.2d 1383, 1385 (1991), and we therefore assume that the same rule applies to Restatement comments. Moreover, to the extent that Carter alleges the presence of additives in the tobacco in Philip Morris's cigarettes, it is by no means clear which side of the good tobacco/bad tobacco line we are on here.

12. As we have concluded above that Carter has stated a colorable strict liability claim against Rite Aid in Count 4, we find that remand is appropriate. However, for the sake of completeness, we shall move on to consider whether Carter's negligence claims against Rite Aid are colorable.

product not reasonably safe, to the extent it is not preempted, does not state a claim recognized under Pennsylvania law.

■ The parties do not dispute that there is much federal preemption of "failure to warn" claims in the tobacco area. The Cigarette Labeling and Advertising Act, 15 U.S.C. § 1334(b) ("Labeling Act"), preempts "[state law] claims based on a failure to warn ... to the extent that those claims rely on omissions or inclusions in ... advertising or promotions; [the Act] does not pre-empt ... claims based on express warranty, intentional fraud and misrepresentation, or conspiracy." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 530–31, 112 S.Ct. 2608, 2625, 120 L.Ed.2d 407 (1992). Thus, to the extent that Carter's negligence claims are based on what Rite Aid did include or should have included in any "advertising or promotions" material, federal law preempts such state law claims, and they are therefore not colorable claims.[13]

Clearly, much of the negligence claims against Rite Aid are couched as a failure to warn, and therefore a threshold question is whether these alleged duties to warn could have involved anything outside of promotional or advertising materials. Rather than engaging in this thorny thought test, however, we initially turn instead to consider that portion of the negligence claim that does *not* explicitly involve a duty to warn. As mentioned above, paragraph 23(e) of the Complaint alleges that Rite Aid was negligent in selling a product—cigarettes—that when used as intended was not reasonably safe for foreseeable users. Philip Morris first argues that this claim is but a disguised failure to warn

claim: that this amounts to imposing on Rite Aid a prohibition against selling the product with only the required federal warnings, as opposed to an affirmative requirement to provide additional warnings, and that such a prohibition is equally preempted. *See* Def.'s Mem. of Law in Opp'n to Pl.'s Mot. to Remand at 7–8.

We cannot accept this characterization of paragraph 23(e). Paragraph 23(e), which alleges a breach of duty by selling a product not reasonably safe, runs in parallel with paragraph 22(d), which alleges "a duty to sell a product that when used as intended was reasonably safe for foreseeable users." Complaint ¶ 22(d). Irrespective of whether such a duty in fact lies, it is difficult to see how this boils down to an imposition of a duty relating to warnings in either advertisement or promotion. In any event, Philip Morris's measure of the Labeling Act's breadth goes beyond the bounds the Supreme Court designated in *Cipollone, see Cipollone*, 505 U.S. at 521–24, 112 S.Ct. at 2620–21, because it would extend preemption to any liability arising from the sale of tobacco that carried the required warnings. The claim that the allegations in paragraph 23(e) are preempted must thus fail.

■ The second argument that Philip Morris brings to bear against the allegations in paragraph 23(e) is that such an allegation is not colorable

> because Pennsylvania law contains no such generalized duty under a negligence theory on product retailers to ensure the safety of every product they market. Plaintiff cites no authority for the imposition of such a duty

---

**13.** Carter appears to read Philip Morris's argument regarding preemption as a claim that the preemption would provide federal question jurisdiction. In response to that perceived tack, Carter argues that only complete field-occupation type preemption can provide federal jurisdiction, and that the more limited type of preemption presented in *Cipollone, see Cipollone*, 505 U.S. at 517, 112 S.Ct. at 2618, is merely a federal defense not granting federal question jurisdiction. While a federal defense indeed does not provide federal question jurisdiction, *see, e.g., Grays Ferry Cogeneration v. PECO Energy Co.*, 998 F.Supp. 542, 551 (E.D.Pa.1998), we read Philip Morris's argument more simply, namely that if there is clear federal preemption over a state claim, such a claim cannot be colorable. As far as that proposition goes, we entirely agree.

on Rite Aid, because there is none.

Def.'s Mem. of Law in Opp'n to Pl.'s Mot. to Remand at 8. Acknowledging as we do the difficulties involved in proving a negative, we nevertheless hold that this bald claim will not suffice. Philip Morris fails to point to anything that would have required Carter to include in her complaint the case law behind her common-law negligence claim against Rite Aid, and the burden, particularly when the question is removal, is on Philip Morris to show that this claim is not colorable. The naked statement that no such duty lies cannot carry the day here, and we consequently find a colorable negligence claim against Rite Aid.[14]

Having found that there is a colorable negligence claim against Rite Aid from at least some portion of Count 2, we will stop our analysis here, and will not consider further whether the Labeling Act preempts other portions of Count 2.[15] This is for the state court to consider on remand.

III. *Conclusion*

In seeking to maintain this case in federal court, Philip Morris has failed to show that Carter has not made a colorable claim against the non-diverse defendant Rite Aid. We have found above that colorable claims of both strict liability and negligence have been alleged against Rite Aid, and, since there is neither diversity of citizenship among the parties nor an extant federal question, we have no jurisdiction over the subject matter. We therefore must remand this case to the Court of Common Pleas of Philadelphia County, from whence it came.

**14.** In support of her negligence allegations in paragraph 23(e), Carter points to section 388 of the Restatement (Second) of Torts, which imposes upon suppliers of chattels the duty "to use reasonable care to inform likely users of the chattels' dangerous conditions", Pl.'s Reply to Def.'s Mem. of Law at 5. It is not immediately clear how this avoids being a "failure to warn" type of claim preempted

*ORDER*

AND NOW, this 23rd day of February, 2000, upon consideration of plaintiff's motion to remand under 28 U.S.C. § 1447(c), and defendant Philip Morris's response thereto, and plaintiff's reply thereto, and for the reasons stated in the accompanying Memorandum, it is hereby ORDERED that:

1. Plaintiff's motion to remand is GRANTED;

2. This case is REMANDED to the Court of Common Pleas of Philadelphia County; and

3. The Clerk shall CLOSE this case statistically.

under *Cipollone*, just as Philip Morris claims. Nonetheless, the burden on is the defendant here, and, as discussed in the text, Philip Morris has failed to carry it.

**15.** That is, the more explicit "failure to warn" negligence allegations.