**Theresa STITT, individually and as Executrix of the Estate of Daniel Stitt, Plaintiff,**

v.

**PHILIP MORRIS INCORPORATED and R.J. Reynolds Tobacco Company, Defendants.**

No. CIV.A.01–1569.

United States District Court, W.D. Pennsylvania.

March 13, 2002.

Mark Coulter, Peirce Law Offices, Pittsburgh, PA, for Plaintiff.

Robert S. Grigsby, Kevin C. Harkins, Cohen & Grigsby, Pittsburgh, PA, Norbert F. Bergholtz, Brennan J. Torregrossa, Dechert, Price & Rhoads, Philadelphia, PA, John D. Goetz, Maureen T. Taylor, S. Tessie Corbin, Jones, Day, Reavis & Pogue, Pittsburgh, PA, for Defendants.

## MEMORANDUM

LANCASTER, District Judge.

This is an action in tort. Plaintiff, Theresa Stitt, individually and as executrix of the estate of her deceased husband, Daniel Stitt ("plaintiff"), filed a complaint in state court alleging negligence, strict liability, and civil conspiracy against defendant cigarette manufacturers Philip Morris Incorporated and R.J. Reynolds Tobacco Company ("defendants"). Her husband, a smoker of cigarettes manufactured by defendants, died of lung cancer. Plaintiff seeks money damages.

Defendants removed the action to this court on diversity of citizenship grounds and have filed a motion to dismiss plaintiff's claims under Fed.R.Civ.P. 12(b)(6). Defendants argue that plaintiff's strict liability and negligence claims are preempted by federal law and that plaintiff's civil conspiracy claim fails because she has failed to allege an underlying tort as required by Pennsylvania law. Defendants further argue that plaintiff's civil conspiracy claim is defective under the *Noerr–Pennington* and separation of powers doctrines.

For the reasons set forth below, the motion will be denied in part and granted in part.

## I. *BACKGROUND*

Accepting plaintiff's allegations as true, the following is the factual predicate for the case.

Plaintiff is the widow and executrix of the estate of Daniel Stitt ("Stitt"), who died on October 27, 1999. During his lifetime, Stitt smoked cigarettes designed, manufactured, advertised, and sold by defendants.

Plaintiff alleges that defendants knew, or should have known, about the enormous health dangers posed by cigarettes, but that they engaged in efforts to conceal this knowledge from the public. Plaintiff also alleges that defendants affirmatively misled the public with respect to these health dangers.

Plaintiff contends that the defendants could have designed, manufactured, and sold a safer cigarette which would have minimized any health dangers, but did not do so. Rather, plaintiff alleges, defendants suppressed information and research pertaining to a safe cigarette.

According to plaintiff, defendants knew, or should have known, that one of the health dangers posed by cigarettes was nicotine addiction, but they publicly denied the addictive nature of nicotine. Plaintiff further contends that the tobacco industry manipulated the amounts of nicotine in cigarettes in order to cause and sustain nicotine addiction. Defendants' purposeful addiction of users of its cigarettes to nicotine allegedly resulted in Stitt's addiction to cigarettes manufactured by defendants and caused Stitt's lung cancer and death.

Plaintiff also alleges that defendants entered into an agreement to suppress and conceal scientific and medical information relating to cigarette smoking and resulting diseases. Plaintiff contends that, in order to carry out their alleged conspiracy, defendants formed the Tobacco Institute ("TI") and the Council of Tobacco Research ("CTR"). According to plaintiff these entities, acting on behalf of defendants, monitored research and literature in the scientific and medical communities regarding cigarette smoking and actively attempted to suppress any negative reports. When TI and CTR failed to suppress negative reports, they allegedly acted to challenge, dilute, and diminish the influence of such reports. Plaintiff alleges that as an intended result of the conspiracy, defendants were able to continue selling cigarettes to a confused and unsuspecting public and that government regulators were misled and deceived, making it impossible for such regulators to properly assess and control the hazards presented by cigarette use.

## II. *STANDARD OF REVIEW*

When the court considers a Rule 12(b)(6) motion to dismiss, the issue is not whether plaintiff will prevail in the end or whether recovery appears to be unlikely or even remote. The issue is limited to whether, when viewed in the light most favorable to plaintiff, and with all well-pleaded factual allegations taken as true, the complaint states any valid claim for relief. *See ALA, Inc. v. CCAIR, Inc.,* 29 F.3d 855, 859 (3d Cir.1994). In this regard, the court will not dismiss a claim merely because plaintiff's factual allegations do not support the particular legal theory he advances. Rather, the court is under a duty to examine independently the complaint to determine if the factual allegations set forth could provide relief under any viable legal theory. 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 n.40 (2d ed.1990);

see also *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). It is according to this standard that the court has reviewed defendants' motion.

## III. DISCUSSION

### A. Preemption

Defendants contend that the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. §§ 1331 *et seq.* ("Labeling Act"), enacted in 1965, expressly preempts plaintiff's claims to the extent the claims are based on failure to warn, concealment, and failure to disclose theories.

Plaintiff acknowledges the preemptive effect of the Labeling Act but argues that the Act does not apply to events occurring prior to 1969 and, therefore, does not preempt her claims to the extent they stem from defendants' actions prior to that year. Plaintiff further contends that the Labeling Act does not preempt any claims based on affirmative misstatements of material fact. We agree.

The Labeling Act, enacted in 1965, required that all cigarettes sold or distributed in the United States contain certain health warnings. *See* 15 U.S.C. § 1333 (1965). The 1965 Act also contained a preemption provision which provided, in relevant part:

> No statement relating to smoking and health shall be required in the advertising of any cigarettes the packages of which are labeled in conformity with the provisions of this Act.

15 U.S.C. § 1334(b) (1965). The Public Health Cigarette Smoking Act of 1969, which became effective on July 1, 1969, amended the preemption provision of the Labeling Act to read as follows:

> No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter.

15 U.S.C. § 1334(b) (1969).

The Supreme Court considered the preemptive effect of the 1969 Act (and its 1965 predecessor) in *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (plurality opinion).[1] In *Cipollone*, the plaintiff alleged that the defendant cigarette manufacturers were responsible for the death of his mother, a long-time smoker. *See id.* at 508, 112 S.Ct. 2608. The plaintiff asserted state law claims for breach of express warranty, failure to warn customers of smoking hazards, fraudulent misrepresentation of smoking hazards to consumers, and conspiracy to deprive the public of medical and scientific information about smoking. *See id.*

The Court in *Cipollone* held that the preemptive scope of the Labeling Act, as originally enacted and as amended, was governed entirely by the express language contained in section 1334. *See id.* at 517, 112 S.Ct. 2608. In analyzing the 1969 Act, the Court found that the broad language of section 1334(b), as amended, preempted some, but not all, common law damages

---

**1.** Although recognizing *Cipollone* was only a plurality opinion, the Court of Appeals for the Third Circuit has acknowledged the opinion as binding. *Michael v. Shiley, Inc.* 46 F.3d 1316, 1322 (3d Cir.1995) (stating that it is "satisfied that the pre-emption discussion and holding [in *Cipollone*] represents the [Supreme] Court's current pre-emption analy-

sis"); *see also Griesenbeck v. Am. Tobacco Co.*, 897 F.Supp. 815, 822 (D.N.J.1995). Moreover, two of the dissenters in *Cipollone* agreed with the plurality's conclusion that the 1969 Act preempted common law failure-to-warn and certain other claims. *Cipollone*, 505 U.S. at 548, 112 S.Ct. 2608 (Scalia, J., concurring in judgment in part and dissenting in part).

actions. *See id.* at 518, 112 S.Ct. 2608.[2] In determining which common-law claims were in fact preempted, the Court explained:

> The central inquiry in each case is straightforward: we ask whether the legal duty that is the predicate of the common-law damages action constitutes a 'requirement or prohibition based on smoking and health ... imposed under State law with respect to ... advertising or promotion,' giving that clause a fair but narrow reading.

*Id.* at 523–24, 112 S.Ct. 2608.

■ Applying this analysis to the state law claims asserted in *Cipollone,* the Court held that plaintiff's failure-to-warn claims were preempted to the extent they "require[d] a showing that respondents' post–1969 advertising or promotions should have included additional, or more clearly stated, warnings." *Id.* at 524, 112 S.Ct. 2608. The Court held, however, that the Act does not preempt failure-to-warn claims that "rely solely on [defendants'] testing or research practices or other actions unrelated to advertising or promotion." *Id.* at 524–25, 112 S.Ct. 2608.[3] The Act also does not preempt state-law products liability claims arising from alleged manufacturing or design defects as opposed to a failure-to-warn. *See id.* at 523, 112 S.Ct. 2608.

■ The Court further held that the 1969 Act also preempted fraudulent misrepresentation claims to the extent they allege that cigarette manufacturers, "through their advertising neutralized the effect of federally mandated warning labels." *Id.* at 527, 112 S.Ct. 2608. The Court cautioned, however, that the 1969 Act does not preempt claims that cigarette manufacturers concealed material facts "insofar as those claims rely on a state-law duty to disclose such facts through channels of communication other than advertising or promotion." *Id.* at 528, 112 S.Ct. 2608. The Act likewise does not preempt fraudulent misrepresentation claims based on affirmative false statements of material facts, even if such statements are made in advertisements. *See id.* at 528–29, 112 S.Ct. 2608 (explaining that such claims "are predicated not on a duty 'based on smoking and health' but rather on a more general obligation the duty not to deceive").

Finally, the Court held that the 1969 Act does not preempt state-law civil conspiracy claims alleging that cigarette manufacturers conspired to misrepresent or conceal material facts because the "duty not to conspire to commit fraud" is not a prohibition "based on smoking and health." *Id.* at 530, 112 S.Ct. 2608.

■ In this case, plaintiff asserts claims for strict liability, negligence, and civil conspiracy against defendants. As set forth above, the Labeling Act does not preempt plaintiff's civil conspiracy claim. With respect to the strict liability and negligence counts, plaintiff does not clearly delineate the grounds for her claims. From the complaint, however, it appears that these claims are based upon failure-to-warn, failure-to-test, and/or design defect theories.

**2.** The Court held that section 1334(b) of the 1965 Act did not preempt any state law damages actions. *See Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 519–20, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992).

**3.** The plaintiff in *Cipollone* advanced two failure-to-warn theories: (1) that defendants were negligent in the manner that they tested, researched, sold, promoted, and advertised their cigarettes; and (2) that defendants failed to provide adequate warnings of the health consequences of cigarette smoking. *See id.* at 524, 112 S.Ct. 2608.

Applying the analysis set forth in *Cipollone,* the court agrees with defendants that the Labeling Act preempts plaintiff's post–1969 claims to the extent they are based on failure-to-warn, concealment, or failure-to-disclose theories. The Labeling Act, however, does not preempt plaintiff's claims to the extent they are based upon defendants' actions prior to 1969. We also find that the Labeling Act does not preempt plaintiff's claims insofar as they are based upon a design defect theory or to the extent they rely solely on defendants' testing, research, or other practices unrelated to advertising or promotion.[4]

B. *Viability of Plaintiff's Claims Under Pennsylvania Law*

Our inquiry does not end with the preemption analysis. Rather, we next must examine the claims the Labeling Act does not preempt and determine whether they are actionable under Pennsylvania law. If plaintiff has failed to state a claim upon which relief can be granted on any of her remaining theories, such claims must be dismissed. We address each of plaintiff's claims in turn.

1. *Strict Liability*

Defendants argue that plaintiff's design defect claim should be dismissed because it is based upon a theory of "generic" or "categorical" liability not cognizable under Pennsylvania law. Specifically, defendants contend that plaintiff is attempting to impose liability merely because cigarettes involve known, inherent health risks. According to defendants, Pennsylvania does not recognize such claims.

█ Plaintiff concedes that Pennsylvania courts have rejected the argument that a manufacturer may be found liable merely because there are known risks inherent in a product's use, but argues that this is not the only theory of liability set forth in her complaint. In particular, plaintiff asserts that the complaint states a viable design-defect claim based on the allegation that defendants could have designed, manufactured, marketed and sold a safer cigarette. We agree.

█ A federal court sitting in a diversity case must apply the substantive law as decided by the forum state's courts. The Pennsylvania Supreme Court has adopted Section 402A of the Restatement (Second) of Torts in strict products liability cases. *See Webb v. Zern,* 422 Pa. 424, 220 A.2d 853 (1966). Section 402A provides for strict liability for the seller of a product "in a defective condition unreasonably dangerous to the user or consumer." *Lewis v. Coffing Hoist Div., Duff–Norton Co.,* 515 Pa. 334, 528 A.2d 590, 592 (1987). A product is defective "when it leaves the supplier's control lacking any element necessary to make it safe for its intended use." *Id.* at 593.

█ The fact that a product is alleged to have caused an injury, however, does not, by itself, establish a defect because a manufacturer is not an insurer of all injuries its products cause. *See Azzarello v. Black Bros. Co.,* 480 Pa. 547, 391 A.2d 1020, 1024 (1978). Moreover, "Pennsylvania courts do not recognize causes of action for products which are legal and not defectively manufactured, but inherently dangerous." *Hite v. R.J. Reynolds Tobacco Co.,* 396 Pa.Super. 82, 578 A.2d 417, 420 (1990); *see also Berkebile v. Brantly Helicopter Corp.,* 462 Pa. 83, 337 A.2d 893, 899

---

**4.** Plaintiff further contends that the Labeling Act does not preempt any claims based on affirmative misstatements of material fact. Although we agree with this characterization of the law, we note that plaintiff has not asserted a separate count alleging fraudulent misrepresentation.

(1975) (plurality opinion) ("The seller of a product is not responsible for harm caused by such inherently defective products as whiskey or knives that despite perfection in manufacture, design, or distribution, can cause injury."); Restatement (Second) Torts § 402A cmt. i ("Good tobacco is not unreasonably dangerous merely because the effects of smoking may be harmful but tobacco containing something like marijuana may be unreasonably dangerous.").

In *Hite*, the Pennsylvania Superior Court rejected plaintiff's argument that the defendant cigarette manufacturers' product was so inherently dangerous that the manufacturers should be made liable for the mischief it causes. 578 A.2d at 421. The *Hite* court explained that Pennsylvania courts have declined to adopt the risk-utility approach to defining design defects underlying plaintiff's argument. *See id.* Federal courts applying Pennsylvania law similarly have held that cigarette claims based upon a risk-utility analysis are not cognizable in Pennsylvania. *See, e.g., Miller v. Brown & Williamson Tobacco Corp.,* 679 F.Supp. 485 (E.D.Pa.) (holding that under Pennsylvania law the risk-utility theory was inapplicable and therefore, plaintiff could not maintain an action against cigarette manufacturer for death caused by cigarette smoking on grounds that cigarettes gave no benefit to society but impose great risk), *aff'd,* 856 F.2d 184 (3d Cir.1988); *Gunsalus v. Celotex Corp.,* 674 F.Supp. 1149, 1158–59 (E.D.Pa.1987) (holding that Pennsylvania had not adopted the risk-utility test and that tobacco was not per se a "defective" product merely because it caused or increased the risk of lung cancer and other diseases). The Pennsylvania Superior Court in *Hite* cited the holdings of *Miller* and *Gunsalus* with approval. *See Hite,* 578 A.2d at 421. ■ Although a plaintiff cannot prevail on a design defect claim against cigarette manufacturers based upon the inherent and known risks of cigarettes, Pennsylvania does recognize design defect claims based on a specific defect in the manufacture of cigarettes or an allegation that a better design is available. *See, e.g., Carter v. Philip Morris Corp.,* 106 F.Supp.2d 768, 772 (E.D.Pa.2000) (holding that plaintiff asserted a colorable design defect claim where complaint alleged that the cigarettes lacked distinctly marked vent holes and did not sufficiently reduce tar and other carcinogens by dilution and filtration); *see also Hite,* 578 A.2d at 421 (noting that "[a]ppellant in the instant case does not contend that a better design is available for the cigarette company's product," implying that Pennsylvania courts would recognize such a claim if properly asserted).

■ Here, plaintiff's strict liability claim must be dismissed to the extent plaintiff alleges that defendants are liable for the risks inherent in cigarette use (*see, e.g.,* Complaint ¶ 21) because Pennsylvania law does not recognize such claims. In paragraph 12 of her complaint, however, plaintiff also alleges:

> The defendants could have designed, manufactured, marketed and sold a "safer" cigarette which minimized, if not eliminated, the health dangers posed by cigarettes, but did not do so. Rather, the defendants suppressed information and research pertaining to a "safe" cigarette.

Plaintiff incorporates this paragraph by reference in her strict liability count. Since this paragraph alleges that a safer alternative design for defendants' cigarettes was available, an actionable theory in Pennsylvania, plaintiff may proceed with her design defect claims on this limited basis.

### 2. Negligence

Plaintiff's negligence claim must be dismissed to the extent it is based on the same design defect theories deemed improper in the strict liability context. *See City of Philadelphia v. Lead Indus. Ass'n, Inc.*, No. Civ. A. 90–7064, 1992 WL 98482, at *4 (E.D.Pa. Apr.23, 1992), *aff'd*, 994 F.2d 112 (3d Cir.1993). As with her strict liability claim, however, plaintiff may proceed with her negligence claim to the extent it alleges a safer alternative design for defendants' cigarettes was available.

Plaintiff also alleges in her negligence count that defendants breached their duty to Stitt by failing to test their cigarettes to determine the nature and extent of the health dangers posed. Pennsylvania law, however, does not recognize an independent cause of action for negligent testing. Rather such claims are subsumed within a plaintiff's claim for defective design or failure to warn. *See, e.g., Oddi v. Ford Motor Co.*, 234 F.3d 136, 143–44 (3d Cir.2000) ("We have found no authority to support [plaintiff's] contention that Pennsylvania recognizes an independent tort for 'negligent failure to test' and [plaintiff] has offered none.").[5]

### 3. Civil Conspiracy

Defendants argue that plaintiff has failed to state a claim under Pennsylvania law for civil conspiracy because plaintiff has failed to plead an underlying cause of action that would support a civil conspiracy claim. Defendants also argue that plaintiff's attempts to premise liability on defendants' lobbying activities is improper under the *Noerr–Pennington* and separation of powers doctrines. Plaintiff contends that dismissal is unwarranted because her civil conspiracy count is supported by the underlying tort of fraud and because the *Noerr–Pennington* and separation of powers doctrines do not apply.

Specifically, plaintiff has alleged that defendants acted in concert to suppress and conceal scientific and medical information related to cigarette smoking and resulting diseases Plaintiff further alleges that groups created by defendants acted to challenge, dilute, and diminish the influence of negative reports. Plaintiff alleges that, as an intended result of the conspiracy, defendants were able to continue selling cigarettes to a confused and unsuspecting public.

Based on the pleadings of record, the arguments of counsel and the briefs filed in support and opposition thereto, the court is not persuaded "beyond a doubt that the plaintiff can prove no set of facts in support of h[er] claim which would entitle h[er] to relief." *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99. We note that this finding applies only to plaintiff's allegation that defendants engaged in a conspiracy to commit the underlying intentional tort of fraud.[6] Plaintiff's strict liability and negligence counts are insufficient to support her civil conspiracy claim. *See Burnside v. Abbott Labs.*, 351 Pa.Super. 264, 505 A.2d 973, 980, 981–82 (1986); *see also*

---

**5.** Defendants also argue that plaintiff's strict liability and negligence claims are impliedly preempted by federal law to the extent plaintiff alleges cigarettes are unreasonably dangerous because of their inherent risks. Because we have held that Pennsylvania law does not recognize such claims, we do not reach defendants' implied preemption argument.

**6.** The fact that plaintiff has not set forth a separate, independent count of fraud is not dispositive. In evaluating motion to dismiss, the court has a duty to examine the entire complaint to determine if the factual allegations set forth could provide relief under any viable legal theory. *See supra* Section II.

*Campbell v. A.H. Robins Co., Inc.,* 615 F.Supp. 496, 500 (W.D.Wis.1985).

The court further finds that defendants' *Noerr–Pennington* and separation-of-powers arguments are premature and are better left to be addressed through a motion for summary judgment on a properly developed record.

For these reasons, defendants' motion to dismiss Count II of plaintiff's complaint is denied. Defendants may renew all of their arguments in a motion for summary judgment on a properly developed record.

## IV. CONCLUSION

For these reasons, defendants' motion to dismiss is granted in part and denied in part. Plaintiff's post–1969 failure-to-warn claims are preempted by the Labeling Act and, therefore, are dismissed. Plaintiff's strict liability and negligence claim also are dismissed except to the extent they allege that a safer alternative design for defendants' cigarettes was available. Defendants' motion to dismiss plaintiff's civil conspiracy claim is denied. The appropriate order follows.

## ORDER

AND NOW, this 13th day of March, 2002, IT IS HEREBY ORDERED that defendants' motion to dismiss [Document # 6] is GRANTED in part and DENIED in part as set forth in detail in the accompanying memorandum.